**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**DARNELL JAMES, KARMAL MICHAEL, HANEEN ARRI,
SEMAJ GUMBS, and ASHEEL PENNYFEATHER,
Defendants**

GOVERNMENT OF THE VIRGIN ISLANDS v. JAMES

Criminal Nos. 399/03, 144/03, 145/03, 124/04, 171/04

Superior Court of the Virgin Islands

Division of St. Croix

April 19, 2005

CORNELIUS L. WILLIAMS, JR., ESQ., Assistant Attorney General, Virgin Islands Department of Justice, St. Croix, U.S. Virgin Islands, *Attorney for Plaintiff*.

PAMELA LYNN COLON, ESQ., Law Offices of Pamela L. Colon, St. Croix, U.S. Virgin Islands, *Attorney for Defendant*.

ROSS, *Judge*

## MEMORANDUM OPINION

### (April 19, 2005)

THIS MATTER is before the Court on Defendant Haneen Arri's ["Arri"] Motion to Suppress Identification of Genitals and Government of the Virgin Islands' ["GVI"] opposition thereto. An evidentiary hearing was held on March 14, 2005, at which time Defendant Karmal Michael ["Michael"] and Defendant Darnell James ["James"] joined in said motion. For the reasons to follow, the motion will be granted.

GVI called Detective Naomi Joseph ["Joseph"], whose testimony elicited the relevant facts recounted below. The identification of Defendants'[1] genitals occurred on or about March 16, 2004. Joseph testified that the alleged victim described Defendants' genitals before she saw the photographs. According to Joseph, the alleged victim described Arri's penis as short, circumcised, with hair. Michael's was described as short, fat and uncircumcised. Allick's penis was described as long,

---

[1] Photographs were taken of Defendants Michael, Arri, Allick and James' penises. Allick is no longer a defendant in the above-captioned matter.

skinny and uncircumcised. Joseph also testified that the alleged victim stated she did not see James'.

Joseph stated that she displayed four photographs[2] of the four defendants in custody to the alleged victim by placing the photographs side by side and asked the alleged victim if she recognized any genitals. The alleged victim responded affirmatively. When asked to demonstrate how the photographs were presented, Joseph stated that both she and the alleged victim were seated at a table, with Joseph at the head and the alleged victim to her side. Joseph laid the photographs out and the alleged victim picked out the corresponding photograph of each Defendant after she described his genitals. Regarding the last photograph, Joseph testified that the alleged victim stated "I don't know who that is, must be Darnell James."

On cross-examination, Joseph testified that the photographs were not shown to the alleged victim in March 2003 because they had not been developed, but her statement was taken at that time. When questioned, Joseph conceded that she had no training in questioning minor victims in sex abuse cases. As far as procedures for questioning minor victims and defendants, Joseph stated that police personnel could interview minor victims without their parents, as it could be more comfortable for them; when questioning defendants, their parents must be present. Joseph also stated that there were no other procedures or policy in place in the Virgin Islands Police Department regarding questioning of minor victims in sex abuse cases.

Questioning then turned to Joseph's training in obtaining eyewitness identification using photographs. Joseph testified that she had on the job training and received basic training about five years ago in the academy. This training was a twenty-hour training program that focused on techniques such as how to arrange photo arrays and inappropriate use of photographs that make suspects stand out. Joseph admitted that for identification purposes, she did not take photographs of other penises for comparison because the photographs at the department show faces only; there is no file of penises. Joseph continued that this procedure had never been done and she was unaware if anywhere else had done such. Joseph stated that she was told by her supervisor to confer with the Attorney

---

[2]    GVI's Exhibits 2 - 5 were photographs of Defendants Michael, Arri, James, and Allick's penises, respectively.

General's Office to ascertain if they had any procedures for performing this particular type of array. She stated that one Attorney General told her that no policy existed to guide her and she was instructed to just show the pictures to the alleged victim, further stating "If she identifies them she does, if she doesn't she doesn't."

Joseph testified that the alleged victim stated that she had sex with four males on March 30, 2003 and that Allick was not one of the four. At the time of viewing the photographs, the alleged victim knew the four defendants had been arrested and a fifth person was not. Joseph stated that she did not tell the alleged victim anything but named each defendant and asked if she remembered what each penis looked like and then showed the four photographs. Joseph admitted that she did not tell the alleged victim that the photographs might not be of the defendants or that the photographs were of the defendants. She also stated that she did not ask the alleged victim how certain she was of the identification and she did not record the results of the photograph showup; nor was the procedure videotaped or audiotaped.

Joseph acknowledged that the photographs showed more than the genital areas, such as clothing and hands. At counsel's query, Joseph also admitted that the alleged victim gave a description of the undergarments that the defendants were wearing. When asked if she provided guidance to the forensic officer responsible for taking the photographs, Joseph's response was in the negative, adding that this was "virgin territory." Arri's counsel noted that in one photograph there was a watch, and Joseph conceded that no one required Arri to remove his watch.

Joseph was also cross-examined on the alleged victim's statement on the location of where the rape occurred and whether there was adequate lighting in the room to enable the alleged victim to give a description of the defendants. Joseph acknowledged that the alleged victim said the incident occurred in Building 5 Apartment 42 and that there was no light in the apartment, but she could see because the porch light from the adjoining apartment, Apartment 41, was on. Arri's counsel then inquired whether the light from one side of the apartment could bend around a dividing pillar to go into the apartment where the incident occurred, to which Joseph responded, "That's how light goes."

When asked how she knew which penis belonged to whom, Joseph replied that she saw them and stated that the forensic officer compiled a booking photograph of the defendants along with the photograph of his

genital area. At the time of the photograph showup, Joseph had these in her possession. Defense counsel asked if the booking photographs were shown to the alleged victim. Joseph said they were not and she was adamant that the alleged victim did not see them when she identified the defendants' genitals.

An identification procedure is violative of due process if it is "unnecessarily suggestive" and creates a "substantial risk of misidentification." *United States v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995). An identification procedure that is merely suggestive does not violate due process if the identification is reliable, as "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Reliability is determined by examining the totality of the circumstances surrounding the identification procedure. *Emanuele*, 51 F.3d at 1128. Factors included in these circumstances may include the witness' opportunity to view the defendant at the time of the crime, witness' degree of attention during observation, accuracy of the witness' prior description, the level of certainty exhibited by the witness when viewing the defendant, the passage of time between the crime and the identification procedure. *Neil v. Biggers*, 409 U.S. 188, 200 (1972).

The Court will first determine if the identification of the defendants' penises was unnecessarily suggestive. According to Joseph, the alleged victim was shown only four photographs of the defendants and the alleged victim was well aware that these defendants had been arrested. Joseph also admitted that she did not have other pictures of penises to include in the photo array of the defendants' penises. Additionally, those photographs showed more than the defendants' genitals, such as their clothing and hands and in one case, a watch. This is troubling especially in light of the fact that the alleged victim described the clothing that the defendants wore at the time of the incident. Common sense would dictate that the areas above and below the genital area would be hidden so as not to influence the alleged victim, even if this was indeed "virgin territory." The Court is also troubled that the alleged victim, by process of elimination, named one of the defendants. The Court is persuaded that the identification procedure in the form of a photo showup was unnecessarily suggestive.

The Court will now address whether the unnecessarily suggestive identification created a substantial likelihood of misidentification of the

defendants penises with reference to the totality of the circumstances. *See Government of the Virgin Islands v. Riley*, 973 F.2d 224 (3d Cir. 1992). This crime occurred at night in an unoccupied apartment in the Marley Housing Community. From the record, the alleged victim stated that the room was dark because there was no light in the apartment, but the porch light from an adjoining apartment was on. The victim knew that the four defendants were arrested and only four photographs were presented to her. And while the alleged victim did name the defendants in her March 30, 2003 statement she only described one defendant's penis, which was Arri's. The confrontation where she identified the defendants by their penises occurred on March 16, 2004, two weeks shy of the one-year anniversary of the crime. Moreover, during the identification procedure, Joseph specifically named each defendant and then asked the alleged victim if she remembered what his penis looked like. From the limited lighting, the limited number of choices available to the victim, the passage of time between the event and the identification, and the leading questions of Joseph, the Court does not find sufficient indicia of reliability in the identification procedure. Weighing all the factors and examining the totality of the circumstances, the Court finds that this unnecessarily suggestive identification created a substantial likelihood of misidentification of the defendants' penises. These premises considered and the Court being duly advised, it is hereby

ORDERED that the motion to suppress identification of the defendants' genitals made on March 16, 2004 is GRANTED.